# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs October 21, 2014

## TRAY D. TURNER v. STATE OF TENNESSEE

### Appeal from the Criminal Court for Knox County
### No. 102127     Bob R. McGee, Judge

### No. E2014-00666-CCA-R3-PC - Filed November 24, 2014

The petitioner, Tray D. Turner, appeals the denial of his petition for post-conviction relief from his 2010 Knox County Criminal Court jury convictions of aggravated robbery and resisting arrest, claiming that he was denied the effective assistance of counsel at trial. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Tray D. Turner.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; Randall E. Nichols, District Attorney General; and TaKisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At the petitioner's jury trial, Ethan Grantham testified that he was the loss prevention associate for the K-Mart located on North Broadway in Knoxville. *State v. Tray Turner*, No. E2010-02540-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App., Knoxville, Sept. 27, 2011), *perm. app. denied* (Tenn. Aug. 16, 2012). During his shift on May 13, 2010, a "service desk employee alert[ed] him of a possible shoplifter in the footwear department." *Id.* When Mr. Grantham found no one suspicious in that department, he proceeded to the service desk, and the service desk employee indicated that the petitioner was the person who had made the shoplifting report. *Id.* Because the petitioner had merchandise in his shopping cart and was not attempting to pay for it at the service desk, "which was the only operating register open at that point," Mr. Grantham believed that the petitioner might attempt to steal

the merchandise. *Id.*, slip op. at 2-3. Mr. Grantham contacted the loss prevention manager, Michael Johnson, about the potential theft, and, in accordance with K-Mart's policy for the apprehension of shoplifters, Mr. Grantham stationed himself in the vestibule area. *Id.*, slip op. at 3.

Approximately 15 to 20 minutes later, Mr. Grantham observed the petitioner "push the cart full of merchandise into the vestibule area." *Id.* Mr. Grantham identified himself as the store's loss prevention associate and requested that the petitioner accompany him back inside the store, at which point the petitioner "became 'really nervous.'" *Id.* The petitioner "started 'reach[ing] in his pocket for something' and 'grabbing in the shopping cart' at the same time, 'grabb[ing] . . . kind of whatever he could.'" *Id.* The petitioner "then 'pulled out a screwdriver' and began 'leaning it towards'" Mr. Grantham. *Id.* Because the petitioner was "yelling and cursing and threatening to stab him," Mr. Grantham backed away. *Id.* After the petitioner ran outside, "Mr. Grantham 'followed him at a safe distance.'" *Id.* The petitioner left "the screwdriver and the merchandise behind" and fled in a vehicle that had arrived in front of the store. *Id.*

Michael Johnson, loss prevention manager for the K-Mart, testified that he had stationed himself outside the store on May 13 after Mr. Grantham had informed him of the potential shoplifter. *Id.*, slip op. at 4. Explaining that "it all happened very quickly," Mr. Johnson saw "an 'adult male exit . . . the building through the front doors with . . . a bed-in-a-bag,'" while simultaneously a vehicle "'drove quickly up'" and parked near the petitioner. *Id.* The petitioner "dropped what he was carrying" and got inside the vehicle, which sped away. *Id.* Mr. Johnson provided law enforcement officers with the vehicle's license plate number and a description of the petitioner. *Id.*

Knoxville Police Department Officer Rodney Townsend testified that he responded to the call of the shoplifting incident on May 13. *Id.* When he arrived at the K-Mart, Mr. Grantham "handed him 'an item,'" explaining that the petitioner had used that item "to 'fend him off' during the robbery." *Id.* Officer Townsend sealed the item in an evidence bag and "'turned the item into Property.'" *Id.*

Although the petitioner did not testify or present proof at trial, he maintained the position "during both closing and opening arguments, in the motion for judgment of acquittal, and through effective use of cross-examination" that his actions on May 13 "did not rise to the level of aggravated robbery . . . and the State neither presented nor possessed sufficient proof to convict" him of aggravated robbery. *Id.*, slip op. at 5. During his motion for judgment of acquittal hearing, the petitioner "argued that he was solely guilty of shoplifting; he evinced his intent to deprive K-Mart of the property in question once he walked past all points of sale and pushed the shopping cart into the vestibule area, attempting

-2-

to exit the store." *Id.* The petitioner also urged the court to follow the rule in *State v. Swift*, 308 S.W.3d 827 (Tenn. 2010), even though the petitioner's item was not concealed.[1] *Id.* If the court did not follow *Swift*, the petitioner reasoned, it "would result in a rule that turned on the difference between a large item," such as the petitioner's bed-in-a-bag, "and a small item, one petite enough to conceal on your person." *Id.* The petitioner further maintained "that he had control over the property before Mr. Grantham ever approached him; therefore, he could not have used violence to take the property from Mr. Grantham because he already had control over it when the confrontation occurred." *Id.*, slip op. at 6. The petitioner claimed "that he only brandished the weapon to facilitate his escape, and because Tennessee has rejected the continuous offense theory, he can neither be guilty of aggravated robbery nor aggravated assault under these facts." *Id.* (footnote omitted).

A Knox County Criminal Court jury convicted the petitioner of two counts of aggravated robbery and one count of resisting arrest. The trial court merged the aggravated robbery convictions, sentenced the petitioner as a Range II, multiple offender, and imposed an effective sentence of 14 years' incarceration to be served at 100 percent by operation of law. This court affirmed the judgments on direct appeal. *See id.*, slip op. at 1.

On August 16, 2013, the petitioner filed, pro se, a petition for post-conviction relief. Following the appointment of counsel and the amendment of the petition, the post-conviction court held an evidentiary hearing on March 10, 2014. The petitioner testified that trial counsel had met with him prior to trial, and, with respect to plea offers, the petitioner testified that trial counsel

> had come and visited me one time, and he had told me that the
> State had offered me 10 years at 35 percent, and – but it also
> included counter offers – offer, and, of course, me feeling like
> I wasn't guilty of robbery, and I – wanted to do as less time as

---

[1] In *Swift*, the defendant entered a Best Buy store, removed two video games from their packages, and concealed them in his pockets. *See State v. Swift*, 308 S.W.3d 827 (Tenn. 2010). Pursuant to company policy, the sales associate who witnessed the theft and the store's loss prevention specialist approached the defendant as he walked toward the Best Buy exit. *Id.* When confronted, the defendant swung a knife at the two men, causing them to back away, and the defendant escaped. *Id.* The jury found the defendant guilty of aggravated robbery, and this court affirmed the conviction on direct appeal. *Id.* at 829-30. The supreme court reversed, holding that the defendant had actually completed the "taking" that accomplished the theft "when [he] removed the games from their cases and concealed them in his pants, evincing his intent to deprive Best Buy of the property." *Id.* at 831. Thus, the supreme court reasoned that the defendant's display of the knife occurred "several minutes after the taking was complete" and that the evidence was therefore insufficient to support the conviction of aggravated robbery. *Id.* The court then modified the defendant's conviction to the lesser included offense of aggravated assault. *Id.* at 832.

possible, I went to the lower end, instead of 10, I went to six – I said six at 35. And he immediately told me, well, she's not going to do that.

And then immediately after that he was like, but I think I can beat an aggravated assault anyway, because I think I can prove that this guy wasn't in fear because he ran out right behind you.

And, you know, he's the attorney so I trusted what he said. So I went on with it.

The petitioner clarified that the offer of 10 years at 35 percent was in exchange for a plea of guilty to aggravated assault. The petitioner stated that, when trial counsel presented this plea offer to him, counsel did not inform him that an aggravated robbery conviction would require service at 100 percent. The petitioner also testified that he believed aggravated assault meant that "you have to use a weapon on somebody"; because he knew that he had not actually harmed anyone during the K-Mart incident, he was under the impression that he had not committed an aggravated assault. The petitioner stated that, had he understood the elements of aggravated assault, he would have "jumped on" the State's offer of 10 years.

The petitioner testified that trial counsel discussed trial strategy with him "a lot," which is what "made me trust [trial counsel] so much because he was real adamant about how he believed I had . . . completed a theft, and that I hadn't committed robbery." With respect to trial testimony, the petitioner stated that trial counsel allowed the petitioner to decide whether he should testify and that counsel neither told him not to testify nor advised against his testifying. The petitioner acknowledged that the trial court had advised him that any prior criminal convictions could be used to impeach his credibility if he chose to testify, and he recalled that, when the trial court asked if he wished to testify, he responded that he had not yet made a decision. The trial court informed the petitioner that he could consider his decision with trial counsel for "a few minutes." The court took a break, during which the attorneys discussed with the trial court which of the petitioner's prior convictions could be admitted into evidence. The petitioner recalled that, when the jury returned to the courtroom, trial counsel informed the court that the defense would not be presenting any proof. Because the petitioner had never been involved in a trial, he was unaware that "proof" included testimony, and he "thought [he] was still going to testify." The petitioner stated that he was more concerned with telling the jury his version of events than he was with any potential repercussions from the exposure of his prior convictions through his trial testimony.

The petitioner stated that, if he had testified at trial, he would have explained

-4-

that the customer service desk employee was his accomplice and that she had provided him with a K-Mart bag and a "nail puller," a device used to remove security tags from merchandise. According to the petitioner, Mr. Grantham stopped him in the vestibule and inquired about the stolen merchandise. The petitioner insisted that he had paid for the merchandise and told Mr. Grantham to check with the customer service desk employee. After Mr. Grantham walked back into the store to speak with that employee, the petitioner grabbed "like two items" from his shopping cart and ran outside. When he reached the getaway car, he discovered the passenger door was locked, and Mr. Grantham was close behind him. At that point, the petitioner produced the "nail puller" and pointed it at Mr. Grantham in order "to protect" himself. The petitioner then dropped all of the merchandise before fleeing in the getaway car.

On cross-examination, the petitioner conceded that, in the past, he had pleaded guilty to several crimes, including aggravated burglary, attempted aggravated robbery, aggravated robbery, and theft of property valued at $1,000 or more but less than $10,000. The petitioner denied that trial counsel had explained to him that an aggravated robbery conviction would necessitate sentencing as a Range II, multiple offender and would require 100 percent service. The petitioner admitted, however, that he recalled seeing the notice that the State was seeking enhanced punishment based on his prior convictions and that he understood the convictions could be used against him if he had testified.

Trial counsel testified that, given the petitioner's prior criminal history, the issue of having to serve 100 percent of a sentence was "one of the first things [he] researched" in the petitioner's case, and counsel remembered communicating to the petitioner the risk of receiving a sentence to be served at 100 percent if he went to trial. During trial preparation, trial counsel recalled the following:

> I remember going out to the detention facility, and if my memory serves right, I remember the conversation because we were in building two in the handicap, and we were talking about 10 years at whatever percentage rate it was as a[n] ag[gravated] assault, and [the petitioner] was always so adamant, and it's because of his belief in his intention – and I had no reason not to believe it – is that he didn't commit a robbery.

> And that the case law now – before we thought it was on our side, and we believed – and I thought we had a good argument for law about it not being a robbery, and that an offer of 10 years of an aggravated assault would be – if we got the robbery dismissed would be what he would get anyway.

And that he was adamant about not going back to prison. That he couldn't do it. And he would rather roll the dice, and I remember that term being used. And I thought there might be a chance that we could get the – that I could show that the ag[gravated] robbery that there wasn't a weapon, because it was almost like a screwdriver looking thing.

And also through the testimony at the preliminary hearing, I never believed [Mr. Grantham] was scared whatsoever of [the petitioner]. And so we thought we might have a chance to get it down to a misdemeanor, and would be willing to roll the dice on an aggravated assault, we believed that the ag[gravated] robbery argument was so strong.

Trial counsel testified that the petitioner made the decision to reject the offer of 10 years. With respect to the decision of whether the petitioner should testify at trial, trial counsel testified that it "was always [the petitioner's] decision," and counsel recalled "discussing many times about what would happen if the judge ruled to let [the petitioner's] . . . prior record come in and what the jury would think about him if he took the stand." Trial counsel denied that he ever prevented the petitioner from testifying and insisted that had the petitioner "strongly felt like he wanted to testify, we would've been prepping testimony two weeks before that trial." On cross-examination, trial counsel reiterated that it was his belief and understanding that the petitioner "was not going to testify" based on their "game plan coming in" to trial. Counsel recalled "discussing strategy on why or why not to testify, and that [the petitioner] believed that if the [prior] robberies came in that it would hurt him."

With this evidence, the post-conviction court denied relief. With respect to the plea offer of 10 years for aggravated assault, the court accredited the testimony of trial counsel and found that counsel and the petitioner "discussed that issue at some length" but "decided they would roll the dice." Although the jury verdict was not the result they were seeking, the court found that trial counsel was not ineffective "merely because a different procedural strategy might have produced a different result." The post-conviction court also accredited the testimony of trial counsel that, had he known the petitioner wished to testify, he would have begun preparing the petitioner for his testimony two weeks prior to trial, which was not done. The court stated that fact "supports the proposition the defendant was fully advised of his right to testify, and just did not testify." Finally, the post-conviction court specifically found no ineffective assistance of counsel in the failure to request special jury instructions.

On appeal, the petitioner reiterates his claim of ineffective assistance of

-6-

counsel, primarily arguing that trial counsel failed to appropriately evaluate the 10-year plea offer from the State and followed a poor trial strategy. In addition, the petitioner contends that he never formally waived his right to testify and that trial counsel should have requested a special jury instruction on the elements of aggravated robbery.

Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Strickland*, 466 U.S. at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are mixed questions of law and fact.

*Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In our view, the record supports the post-conviction court's denial of relief. With respect to the petitioner's argument that counsel failed to adequately evaluate the State's offer of 10 years in exchange for a plea of guilty to aggravated assault, the post-conviction court found that the petitioner's "adamant reluctance to go back to prison" was the impetus for his "roll[ing] the dice" and proceeding to trial, and the evidence does not preponderate against those findings. *See Henley*, 960 S.W.2d at 578-79; *Bates*, 973 S.W.2d at 631. With respect to the strategy followed by trial counsel – that the petitioner's theft was completed when he entered the vestibule and that, similar to the case of *Swift*, the petitioner had committed, at worst, the crime of aggravated assault – the post-conviction court found that it was "a very plausible argument" even though it was ultimately unsuccessful and that it was within the "range of reasonable professional assistance." This court will grant no relief to the petitioner based on trial counsel's "sound, but unsuccessful, tactical decision." *See Adkins*, 911 S.W.2d at 347.

The petitioner makes very brief arguments that "he never formally waived his right to testify" and that trial counsel was ineffective "in not seeking a special jury instruction to clarify" the elements of aggravated robbery. The petitioner offers no citation to authority in support of either of these arguments and provides practically no argument in support of these positions. Because the petitioner has made cursory arguments with no citation to authority, he has waived our consideration of these issues for failure to cite to authority and to present an *adequate* argument. *See* Tenn. Ct. Crim. App. R. 10(b). In any event, the post-conviction court specifically found that the petitioner "was fully aware of his right to testify" following a *Momon* colloquy, and the record supports that finding. The petitioner is not entitled to relief on these issues.

We find no error in the findings of the post-conviction court, and we hold the petitioner has failed to prove by clear and convincing evidence that trial counsel's representation was deficient or prejudicial. Accordingly, the order of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE